IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **MIDWAY OILFIELD** | § | Case No. 18-34567 |
| **CONSTRUCTORS, INC.,** | § | Chapter 11 |
|     Debtor | § | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL**

**A HEARING WILL BE CONDUCTED ON THIS MATTER BEFORE THE HONORABLE DAVID R. JONES ON AUGUST 23, 2018, AT 2:15 P.M. IN COURTROOM 400, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE DAVID R. JONES,
U.S. BANKRUPTCY JUDGE:**

    COMES NOW, Midway Oilfield Constructors, Inc., debtor-in-possession ("Debtor"), by and through its undersigned proposed attorneys, hereby file this Emergency Motion for Interim and Final Orders (i) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code, (ii) Granting Adequate Protection for the Use Thereof, and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral ("Motion") and in support hereof, respectfully states as follows:

# I.
# JURISDICTION AND VENUE

1.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014.

# II.
# BACKGROUND

2.      On August 15, 2018 (the "Petition Date"), the Debtor filed its Voluntary Petition for Relief (the "Bankruptcy Case") under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtor continues to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor provides construction services to the upstream, midstream, and downstream sectors of the oil and gas industry. Based out of Midway, Texas, the Debtor provides services across the State of Texas and Oklahoma. The Debtor has two primary segments of its business. The first segment focuses on pipeline, facility, and well-site construction, modification, and maintenance as well as well-site services, facility construction. This includes new pipeline construction and maintenance, pipe and structural fabrication, blasting and painting, pipeline right of way mowing and reclamation, plant and pipeline operations and management, well connection and tank battery installation, pit closures and land farming, sandblasting and coatings installer. The second segment focuses on providing vacuum trucks, cleaning services, drilling fluids transportation, production and flowback water hauling, and saltwater disposals for clients including Apache Corporation, Halcon Resources, and Cabot Oil.

4.      Several recent factors including the 2009 downturn in the oil and gas industries and the industry's subsequent recovery efforts, customer disputes resulting in refusal or slow payment and increased costs, as well as over extension of credit have had material adverse effects on the Debtors' financial condition. The most significant impact has been Debtor's inability to service mounting debt obligations and other trade payable obligations has resulted in a severe cash-flow shortage, although several valuable projects are currently in progress and out for bid. Through this Bankruptcy Case, the Debtor seeks protection and enforcement of the automatic stay with respect to the Debtor's assets while the Debtors seek alternative sources of funding pending a restructuring of its business operations which may include, but are not limited to, payroll reduction and refocusing operations on the most profitable business segments.

5.      On or about July 14, 2000, the Debtor entered into a Merchant Services agreement with Compass Bank d/b/a Commercial Billing Services ("Compass") whereby Compass acquires the submitted accounts receivable and distributes 89% of the stated value of the receivable ("Compass Obligation"). The 11% retained by Compass reflects a 1% service fee and a 10% reserve retained to insure future payment on all accounts receivables. Compass receives and

retains the full balance of the purchased receivable from the Debtor's customers. In the event a specific account receivable is deemed uncollectible and the reserve is insufficient, the Debtor is obligated to repay the funds advanced by Compass. The Compass Obligation includes a personal guarantee by Bill Smith, Sr., the sole shareholder and director of the Debtor.

6. To secure the Debtor's obligations to Compass under the Merchant Agreement, Compass holds a properly perfected first priority security interest in all of the Debtor's accounts, accounts receivable, general intangibles and returned goods, together with all amounts to the Debtor's credit and on deposit with Compass (collectively, the "Pre-Petition Collateral").

7. As of the Petition Date, the outstanding balance of receivables purchased by Compass totaled $2,076,804.40.

8. Pursuant to the terms of the Merchant Agreement and related agreements between the Debtor and Compass, a reserve fund is maintained by Compass which, as of the Petition Date, had a balance of $278,042.89 (the "Reserve Account").

9. On August 7, 2018, BizFund, LLC ("BizFund") obtained a judgment against the Debtor in the amount of $365,733.60 (the "BizFund Judgment") in the case styled *BizFund, LLC vs. Midway Oilfield Contractors, Inc., et al.* (Index No. 1912-2018) in the Supreme Court of the State of New York, County of Kings.

10. On August 9, 2018, Ace Funding Source, LLC ("Ace") obtained a judgment against the Debtor in the amount of $1,299,641.25 (the "Ace Judgment") in the case styled *Ace Funding Source, LLC vs. Midway Oilfield Contractors, Inc., et al.* (Index No. 1964-18) in the Supreme Court of the State of New York, County of Kings.

11. On or about August 9, 2018, Compass was served with a garnishment regarding the BizFund Judgment.

12. On or about August 13, 2018, Compass was served with a garnishment regarding the Ace Judgment.

13. On August 14, 2018, in connection with the garnishment regarding the BizFund Judgment, Compass issued a check to the New York City Marshal in the amount of $121,914.62 (the "Garnishment Check"). This amount was comprised of $120,309.31 constituting amounts contained in the Debtor's deposit accounts and $1,605.31 constituting the amount in the account of the debtor's principal, Billy A. Smith, also a named defendant in the lawsuit. Shortly after issuance of the Garnishment Check, Compass discovered the Debtor's accounts were overdrawn in the amount of $45,209.14 at the time of issuance of the check to the Marshal, and Compass consequently stopped payment on the Garnishment Check.

14. Debtor requests authority to use, in addition to the other Cash Collateral (defined below), the funds that will be available in the Compass account following the processing of the stop payment order relating to the Garnishment Check (such funds, which are estimated to equal to approximately $75,000 after accounting for Debtor's overdrawn amounts, are referred to as the "Replenished Funds").

### III. RELIEF REQUESTED

15. Pursuant to Bankruptcy Rule 4001(b), the following summarizes the material terms of the Interim Order. The Debtors seek authority to use the Cash Collateral. As used herein, the term "Cash Collateral" means monies in the possession of Debtor on the Petition Date, or received by after the Petition Date in respect of or arising out of Debtors' use, sale, consumption or other disposition of any Pre-Petition Collateral or Replacement Collateral (defined below), including the Replenished Funds but excluding the Purchased Receivables or proceeds thereof and the Reserve Fund. The Debtor seeks to use such Cash Collateral as working capital in the operation of its business for the limited purposes specified in, and at least for the period defined in the attached Budget.

16. As adequate protection for the diminution in value of the Pre-Petition Collateral or Replacement Collateral (defined below) caused by the Debtor's use of the Cash Collateral, the Debtor will (i) maintain the value of its business as a going concern, (ii) provide Compass replacement liens upon the Debtor's assets and proceeds thereof including but not limited to post-petition accounts, accounts receivable and cash (collectively, the "Replacement Collateral"); and (iii) award Compass an administrative expense priority claim.

17. By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter an order (i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

18. Compass consents to the relief sought herein provided the terms contained in the proposed order accompanying the Motion.

### IV. APPLICABLE AUTHORITY

19. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Cash collateral is defined as, "[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest […]." 11 U.S.C. § 363(a).

20. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

21. Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

22.     At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien. 11 U.S.C. § 363(p)(2) ("In a hearing under [§ 363], the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.").

### Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

14.     As set forth in the Declaration of Billy Smith, Sr. In Support of the Debtor's Chapter 11 Petition and First Day Motions, the Debtor's inability to access cash pre-petition forced the Debtor to cease operation of its producing assets. Accordingly, the Debtor faces "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion.

15.     The immediate use is necessary, and it will stabilize the Debtor's operations and revenue by allowing the Debtor to maintain adequate staffing levels sufficient to operate the Debtor's business. Without authority to use the Cash Collateral, the Debtor will not be able to function as a going concern and will not be able to proceed to consideration of a plan of reorganization. The Debtor possesses substantial assets which could be lost entirely if the Debtor is unable to resume operations. Accordingly, authority to use the Cash Collateral is necessary to avoid the shutdown of the Debtor's business, and will be in the best interests of the Debtor, its estate and its creditors.

### The Proposed Adequate Protection is Sufficient.

16.     The Debtor intends to provide adequate protection, to the extent of the aggregate diminution in value of Pre-Petition Collateral and Replacement Collateral (collectively, the "Collateral") from and after the Petition Date, to Compass for the use of the Cash Collateral by: (a) maintaining the going concern value of the Debtor's business by using the Cash Collateral to continue to operate the business and administer this Chapter 11 Case; (b) providing to Compass a replacement lien pursuant to 11 U.S.C. § 361(2) in the Debtor's assets, with such lien being junior in priority only to (i) Compass' pre-petition liens, (ii) valid, enforceable, perfected and nonavoidable liens and security interests on the assets of Debtor that existed on the Petition Date and were superior in priority to Compass' liens as of the Petition Date, and (iii) fees payable to the Clerk of this Court or, pursuant to 28 U.S.C. Section 1930, the United States Trustee.

17.     The Debtor believes that Compass is adequately protected for the use of the Cash Collateral in that the orderly operation of the Debtor's business generates sufficient revenues to protect any diminution in value of the Collateral. Indeed, the continuation of the Debtor's operations presents the best opportunity for Compass to receive the greatest recovery on account of their claims. Accordingly, the Debtor submits that use of the Cash Collateral will allow the Debtor to continue its operations and thereby protect the Lender's interests.

18.     Courts have consistently recognized that the preservation of the going concern value of secured creditor's collateral constitutes adequate protection of such creditors' interest in

the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

## V. REQUEST FOR INTERIM RELIEF

19.     An immediate need exists for the Debtor to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the Budget attached hereto as Exhibit A. Without the immediate use of the Cash Collateral for an interim period, the Debtor will be unable to resume operations and risks the loss of significant assets. Clearly this would have a severe negative impact upon the Debtor's going concern value and ability to successfully create value for all creditors. The Debtor's business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation. Accordingly, it is imperative that a preliminary hearing be set immediately.

20.     Pursuant to Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court (i) authorize the temporary use of Cash Collateral consistent with the Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing and (ii) direct Compass to release the reserve funds it currently holds to the Debtor in order to provide the Debtor to sufficient cash to fund the expenses shown in the Budget.

## VI. REQUEST FOR FINAL HEARING

21.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor also request that the Court set a date for a final hearing as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## VII. NOTICE

22.     Notice of this Motion will be provided by email, when available, or by traditional mail to: (i) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtor's secured creditors, including the Lenders; (c) the parties listed on the Debtors' master service list. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII. BASIS FOR EMERGENCY RELIEF

23.     An emergency exists because the Debtor faces immediate and irreparable harm to the estate absent the emergency consideration of the relief requested in this Motion. The immediate use is necessary, and it will stabilize the Debtor's operations and revenue by paying ordinary, post-petition operating expenses, as well as any court approved pre-petition expenses that may be at issue. As a result, if an emergency hearing is not set, the Debtor will be unable to operate.

WHEREFORE, the Debtor requests that this Court enter an order, in substantially the form filed herewith, granting the relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

Respectfully submitted this 22nd day of August, 2018.

**WALDRON & SCHNEIDER, PLLC**

/s/ Kimberly A. Bartley
Kimberly A. Bartley
SBN 24032114
kbartley@ws-law.com
15150 Middlebrook Drive
Houston, Texas 77058
Tel: 281-488-4438
Fax: 281-488-4597
PROPOSED ATTORNEYS FOR THE DEBTORS

**CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)**

I hereby certify to the accuracy of the matters set forth in the foregoing motion.

/s/ Kimberly A. Bartley
Kimberly A. Bartley

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion was served upon the attached service list via the Court's EM/ECF electronic system on the 22nd day of August, 2018.

/s/ Kimberly A. Bartley
Kimberly A. Bartley