IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **MIDWAY OILFIELD** | § | Case No. 18-34567-H1-11 |
| **CONSTRUCTORS, INC.,** | § | Chapter 11 |
| **Debtor** | | |

### DECLARATION OF BILLY SMITH, SR.
### IN SUPPORT OF MOTION

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF MADISON** | § |

Billy A. Smith, Sr. being duly sworn, deposes and says:

1. I am the sole Shareholder and Director of Midway Oilfield Constructors, Inc. ("Midway"), a Texas corporation and a debtor and debtor-in-possession in the above-captioned chapter 11 case ("Debtor"). I have served in these capacities since the inception of Midway. I am familiar with the day-to-day operations, business and financial affairs of the Debtor.

2. I submit this affidavit in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), filed on August 15, 2018, (the "Petition Date"), and the Debtor's Motion for Use of Cash Collateral ("Motion").

3. I believe that the relief sought in the Motion is essential to ensure the uninterrupted operation of the Debtor's business and the success of the Debtor's reorganization.

4. Except as otherwise indicated, the facts set forth in this affidavit are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based upon experience, knowledge, and information concerning the operations of the Debtor and its industry as a whole. I am authorized to submit this affidavit on behalf of each Debtor, and if called upon to testify, I would testify competently to the facts set forth herein. Unless otherwise indicated, the financial information contained in this affidavit is unaudited.

5. Since October, 1981, Midway has provided construction services to the upstream, midstream, and downstream sectors of the oil and gas industry across the States of Texas and Oklahoma. There are two main segments of the Midway business operations. First, Midway performs pipeline, facility, and well-site construction, modification, and maintenance as well as well-site services, facility construction. This includes new pipeline construction and maintenance, pipe and structural fabrication, blasting and painting, pipeline right of way mowing and reclamation, plant and pipeline operations and management, well connection and tank battery installation, pit closures and land farming, sandblasting and coatings installer. Second,

Midway maintains a fleet of vacuum trucks providing cleaning services, drilling fluids transportation, production and flowback water hauling, and saltwater disposals for clients including Kinder Morgan, Noble Energy, XTO Energy, and SM Energy.

6. On or about July 14, 2000, the Debtor entered into a Merchant Services agreement with Compass Bank d/b/a Commercial Billing Services ("Compass") whereby Compass acquires the submitted accounts receivable and distributes 89% of the stated value of the receivable ("Compass Obligation"). The 11% retained by Compass reflects a 1% service fee and a 10% reserve retained to insure future payment on all accounts receivables. Compass receives and retains the full balance of the purchased receivable from the Debtor's customers. In the event a specific account receivable is deemed uncollectible and the reserve is insufficient, the Debtor is obligated to repay the funds advanced by Compass. The Compass Obligation includes a personal guarantee by Billy Smith, Sr., the sole shareholder and director of the Debtor.

7. To secure the Debtor's obligations to Compass under the Merchant Agreement, Midway granted a first priority security interest in all of the Debtor's accounts, accounts receivable, general intangibles and returned goods, together with all amounts to the Debtor's credit and on deposit with Compass (collectively, the "Pre-Petition Collateral"). As of the Petition Date, the outstanding balance of receivables purchased by Compass totaled $2,076,804.40. Pursuant to the terms of the Merchant Agreement and related agreements between the Debtor and Compass, a reserve fund is maintained by Compass which, as of the Petition Date, had a balance of $278,042.89 ("Reserve Account").

8. On August 7, 2018, BizFund, LLC ("BizFund") obtained a judgment against the Debtor in the amount of $365,733.60 ("BizFund Judgment") in the case styled *BizFund, LLC vs. Midway Oilfield Contractors, Inc., et al.* (Index No. 1912-2018) in the Supreme Court of the State of New York, County of Kings.

9. On August 9, 2018, Ace Funding Source, LLC ("Ace") obtained a judgment against the Debtor in the amount of $1,299,641.25 ("Ace Judgment") in the case styled *Ace Funding Source, LLC vs. Midway Oilfield Contractors, Inc., et al.* (Index No. 1964-18) in the Supreme Court of the State of New York, County of Kings.

10. On or about August 9, 2018, Compass was served with a garnishment regarding the BizFund Judgment. On or about August 13, 2018, Compass was served with a garnishment regarding the Ace Judgment.

11. On August 14, 2018, in connection with the garnishment regarding the BizFund Judgment, Compass issued a check to the New York City Marshal in the amount of $121,914.62 ("Garnishment Check"). This amount was comprised of $120,309.31 constituting amounts contained in the Debtor's deposit accounts and $1,605.31 constituting the amount in the account of the debtor's principal, Billy A. Smith, also a named defendant in the lawsuit. Shortly after issuance of the Garnishment Check, Compass discovered the Debtor's accounts were overdrawn in the amount of $45,209.14 at the time of issuance of the check to the Marshal, and Compass consequently stopped payment on the Garnishment Check. Midway anticipates approximately $75,000.00 remains in the Compass account.

12.     As a consequence of all of the above circumstances, the Debtor has sought protection under chapter 11 to provide the opportunity and the tools to restructure the operations. This chapter 11 case should allow the Debtor to right-size the organization, address the operational issues, realign cash flows and business cycles, and achieve cash flow and profitability that will allow it to emerge from chapter 11 as a strong, viable operating enterprise once again, better equipped to survive in this changed and changing economic environment.

13.     As outlined the budget submitted in support of the Motion, Midway anticipates weekly gross revenue of approximately $261,000 from its vacuum truck business and approximately $127,000.00 from its construction business. Further, Midway anticipates weekly expenses of approximately $151,699.00 for the vacuum truck business and approximately $87,978.30 for its construction business. The expenses identified are those customarily used in the industry and are at comparable rates charged to other similarly situated business.

14.     The relief requested in the Motion will provide funds to which Midway is currently entitled, which will supplement the current cash flow and enable Midway to continue its operations, giving it best opportunity to complete its reorganization.

*/s/ Billy A. Smith, Sr., President*

Billy A. Smith, Sr.

SWORN TO BEFORE ME on this the __22__ day of August, 2018.

*/s/ Ginger Barger*

Notary Public in and for the State of Texas



GINGER BARGER
Notary Public
STATE OF TEXAS
My Comm. Exp. October 8, 2019